UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Richard VASQUEZ-RODRIGUEZ,<br>Defendant. | Crim. No. 14-419 (KM)<br><br>OPINION & ORDER |

The defendant, Richard Vasquez-Rodriguez, is accused in a two-count indictment of distributing and possessing with intent to distribute at least five kilograms of cocaine and one kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). He has filed a motion to suppress physical evidence—primarily, a metal air tank that contained 19 kilograms of cocaine and 8 kilograms of heroin that were seized from his Chevrolet Tahoe. (ECF Nos. 16, 18) The defendant disputes certain facts—for example, whether he drove recklessly or whether he truly consented to a search of his car. I will not order an evidentiary hearing, however, because those issues are ultimately immaterial to the suppression issue. The officers' actions, and their "discovery" of the air tank in the Tahoe, rested on separate and independent grounds. Because one of the participants in the drug trafficking organization was cooperating with the authorities, officers on surveillance saw Vasquez-Rodriguez take possession of the air tank and place it in the Tahoe, and followed him when he drove off with the drugs. From that moment, the officers possessed probable cause to pull him over, arrest him, and search his car. None of these grounds depend on the resolution of the issues of fact identified by defense counsel. Defendant's motion to suppress evidence will be denied.

## BACKGROUND

Investigative reports turned over in discovery disclose the following facts:

In January 2014, a confidential source ("CS") informed agents of the Drug Enforcement Administration ("DEA") that members of a drug trafficking organization had engaged him[1] to transport narcotics from Texas to New Jersey. Specifically, he was to drive to New Jersey with a metal air tank that contained narcotics. Once in New Jersey, he was to deliver the tank to a person who would transport it to its ultimate destination somewhere in the New York City area.

On January 14, 2014, in Texas, the traffickers loaded the air tank into CS's vehicle, and he set off for New Jersey. Unbeknownst to the traffickers, while still in Texas, CS delivered the air tank to the DEA, who transported it to New Jersey by airplane. Meanwhile, CS drove to New Jersey without the tank.

On January 16, 2014, DEA agents and New Jersey State Police ("NJSP") officers[2] met up with CS in New Jersey. They placed the air tank back into CS's vehicle, where the traffickers had placed it earlier. Their intention was to make it appear that CS had, as agreed, driven the tank containing the drugs to New Jersey. CS then contacted members of the trafficking organization by telephone. He agreed to meet them at a location in New Brunswick, New Jersey, and to deliver the air tank to them there. DEA and NJSP officers set up surveillance at the meeting location.

The officers on surveillance saw a green Chevy Tahoe pull up. It was occupied by two men, one of whom was later identified as the defendant, Richard Vasquez-Rodriguez. CS drove to the meeting location. The Tahoe pulled in front of CS's vehicle, and then both vehicles drove into a nearby fenced-in yard. The officers saw CS, Vasquez-Rodriguez, and a third person

---

[1]   I arbitrarily use the male pronoun to refer to CS. It has not been revealed whether CS is male or female.

[2]   For simplicity, I refer to the DEA agents and police officers collectively as "officers."

2

remove the air tank from CS's vehicle and place it in the rear of the Chevy Tahoe.

Vasquez-Rodriguez got into the driver's seat of the Tahoe and drove off. NJSP officers in an unmarked car followed him as he drove north on the New Jersey Turnpike. According to the officers, he drove erratically, exceeded the speed limit, and failed to signal when switching lanes. The Tahoe left the New Jersey Turnpike and entered the city of Jersey City, New Jersey. There, according to the officers, Vasquez-Rodriguez continued to drive in violation of local traffic laws.

Apparently afraid of losing surveillance in the city, the NJSP officers pulled the Tahoe over. The ostensible basis for the stop was a violation of the traffic laws. The officers asked Vasquez-Rodriguez for his license and registration. He could not identify the owner of the vehicle or state his destination. To the officers, he appeared nervous. The air tank was in the back of the Tahoe. It was in plain view (though of course its contents were not).

The officers ordered Vasquez-Rodriguez out of the Tahoe. They presented him with a consent-to-search form in English and Spanish, which he signed. Vasquez-Rodriguez said he was cold, and asked for his jacket. Before handing him the jacket, the officers patted it down. They discovered a bundle of heroin in the pocket. Vasquez-Rodriguez was then placed under arrest.

A search of the car yielded the air tank, a circular handsaw, and six cellular telephones. The air tank—which had apparently been cut and welded back together—was found to contain 19 kilograms of cocaine and 8 kilograms of heroin, wrapped in plastic.

## DISCUSSION

Vasquez-Rodriguez has filed a motion for suppression of evidence. The motion speaks in somewhat general terms and cites *Miranda v. Arizona*, 384 U.S. 436 (1966). But the emphasis of the motion, very understandably, is suppression of the seized drugs. Thus the brief does not identify any statement that must be suppressed, but states that the drugs seized from the car must be suppressed as "fruits" of defendant's custodial interrogation. Routine

questioning in connection with a traffic stop does not require *Miranda* warnings. *United States v. Anderson*, 859 F.2d 1171, 1177 (3d Cir. 1988) (citing *Berkemer v. McCarty*, 468 U. S. 420, 439-40 (1984) (questioning of driver, where detention has not ripened into "custody," is permissible and does not require *Miranda* warnings)). And at any rate, for the reasons discussed below, the permissibility of the search did not depend on any statement of the defendant.

At oral argument, defense counsel clarified the focus of the motion: defendant sought, not to suppress statements as such, but to suppress the physical evidence taken from the car—most critically, the metal air tank containing the drugs. Counsel requested an evidentiary hearing, at which, he said, his client might or might not testify. The need for a hearing, according to counsel, was established by counsel's own certification, as well as counsel's proffer at oral argument, discussed further below.

### A. Standard For Granting Evidentiary Hearing

On suppression motions, "[e]videntiary hearings are not granted as a matter of course...." *United States v. Thompson*, 540 F. App'x 445, 446 (5th Cir. 2013) (quoting *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir.1983)). A suppression hearing is not a discovery device. Nor will a hearing be convened based on a bare desire to probe the credibility of government witnesses.

An evidentiary hearing is appropriate only when the defendant establishes that facts material to suppression are meaningfully in dispute:

> The standard for when a hearing is required is well settled in our case law. As a general matter, an evidentiary hearing is required in circumstances in which a defendant advances a "colorable claim" that his or her constitutional rights have been violated. *United States v. Brink*, 39 F.3d 419 (3d Cir. 1994) (holding that the District Court erred in failing to hold an evidentiary hearing where the defendant stated "a colorable claim that the government violated his constitutional right to counsel by placing him in a cell with a known informant who may have been acting as a government agent"). A claim is "colorable" if it consists "of more than mere bald-faced allegations of misconduct." *United States v.*

4

*Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). Thus, to warrant an evidentiary hearing, a defendant's motion must contain "issues of fact material to the resolution of the defendant's constitutional claim." *Id.*, 89 F.3d at 1067.

*United States v. Jackson*, 363 F. App'x 208, 210 (3d Cir. 2010).

A threshold burden, then, falls on the defendant. A defendant who wants an evidentiary hearing on a suppression motion must proffer specific, non-conjectural and detailed facts that raise a relevant, disputed issue:

> A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress.

*United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). A "material" factual issue is one that "makes a difference in the outcome." *United States v. Persinger*, 2008 WL 2766154, at *2 (3d Cir. 2008) (not precedential).[3]

That requirement—that to justify an evidentiary hearing, a defendant's pretrial motion must raise a specific, non-conjectural and detailed factual issue going to the validity of the search—has gained wide acceptance. It has been stated as a substantive rule governing the district court's proper exercise of its discretion,[4] and as a basis for a finding that an issue was waived on

---

[3] This initial responsibility to identify a factual issue is a threshold burden. It does not detract from the government's ultimate burden of persuasion, in a proper case, that the evidence was constitutionally obtained. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

[4] *See Hines, supra; Thompson, supra; United States v. Getto*, 729 F.3d 221, 227 n. 6 (2d Cir. 2013) ("an evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question") (citation omitted); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (denying suppression hearing as a matter of law because there was no allegation that was "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search [were] in issue") (quoted in *United States v. Gwin*, 78 F. App'x 556, 557 (9th Cir. 2003)).

5

appeal.[5] The principle, however, is the same: to obtain a hearing, the defendant must proffer a specific, relevant issue of fact.

What form must such a proffer take? From time to time, the United States has suggested that an affidavit is required, and I have found some support for that position:

> A defendant moving for the suppression of evidence seized following a search is not automatically entitled to an evidentiary hearing unless he supports his motion with "moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question," *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992), including an affidavit of someone alleging personal knowledge of the relevant facts, *see, e.g., United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967). In the present case, the record does not reveal a submission to the district court of any affidavit from a person who had such personal knowledge.

*United States v. Barrios*, 2000 WL 419940 at *1 (2d Cir. 2000) (unpublished) (upholding denial of a hearing).

Other case law, however, is less categorical:

> Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be sufficiently definite, specific,

---

[5]
> Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires that a party raise a motion to suppress before trial. A party who fails to do so "waives any Rule 12(b)(3) defense, objection, or request," although "[f]or good cause, the court may grant relief from the waiver." FED. R. CRIM. P. 12(e). This waiver rule applies not only when a defendant fails to file any pretrial motion to suppress, but also when a defendant fails to assert a particular argument in a pretrial suppression motion that he did file.... To avoid waiving a particular argument, the party must make "sufficiently definite, specific, detailed and nonconjectural factual allegations supporting his suppression claim" in his pretrial motion.

*United States v. Hill*, 471 F. App'x 143, 153 (4th Cir. 2012) (quoting *United States v. White*, 584 F.3d 935, 948-49 (10th Cir. 2009)). *See also United States v. Augustine*, 742 F.3d 1258, 1266 (10th Cir. 2014) (failure to raise "definite, specific, detailed, and nonconjectural factual allegations" in pretrial motion waives the suppression issue).

> detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.

*Thompson, supra,* 540 F. App'x at 446 (quoting *Harrelson, supra,* 705 F.2d at 737; internal quotation marks and citations omitted)).

I accept that a court *might* require that such facts be proffered by affidavit. Thus, the United States Court of Appeals for the First Circuit has upheld the denial without a hearing of a motion to suppress drugs seized from an automobile. There, the district court initially denied the motion because the defendant had failed to submit an affidavit. Later, when the defendant did submit an affidavit, the district court found it insufficient. The Court of Appeals affirmed:

> As for [defendant's] faulting the judge for not convening an evidentiary hearing ... we note that [defendant] had to satisfy an entry-level burden of showing that the police's warrantless search did not come within "any" recognized warrant exception .... And this he did not do, for he alleged nothing "definite, specific, detailed, and nonconjectural" that could defeat application of either exception here.

*U.S. v. Acosta-Colon,* 741 F.3d 179, 207 (1st Cir. 2013) (quoting *United States v. Allen,* 573 F.3d 42, 50–51 (1st Cir. 2009)). So ultimately it was lack of specificity, not lack of an affidavit, that determined the result.[6]

But set that aside. As I stated at oral argument, I will not treat an affidavit as an absolute prerequisite to a hearing in this case. I will require, however, that any factual dispute requiring a hearing for its resolution be identified and stated specifically.

---

[6] The requirement, or not, of an adequate affidavit is consequential to this case. Here, the only factual submission in support of the defendant's motion to suppress evidence was a certification of his counsel. Under the strictest cases, an attorney's affidavit not based on personal knowledge would not merit a hearing. *Barrios,* 2000 WL 419940 at *1 (upholding denial of hearing because, *inter alia,* "[t]he affidavit submitted by Barrios's attorney was not made on personal knowledge").

7

### B. Denial of Motion Without Evidentiary Hearing
### 1. Defense contentions

Defense counsel, at oral argument, in his brief (ECF no. 16), and in an attorney certification (ECF no. 19), has suggested that the following disputed issues of fact require a hearing:

First, counsel questioned the absence of any video or audio recording of the traffic stop. He stated his understanding that police vehicles record all such encounters. The AUSA responded that the car in question was an undercover vehicle, not a conventional police car; it was not outfitted with a dashboard camera or similar equipment. I suggested that the AUSA simply permit defense counsel to inspect the car, and he agreed. Should that inspection reveal recording equipment, I may revisit the issue.

Second, defense counsel questioned the absence of any recording of his client's voice at the New Brunswick handoff of the metal tank. Discovery revealed that CS was wearing a body wire at the time. The AUSA responded that the recording had not contained any audible statement of the defendant. He added that, in response to the request of defense counsel, the recording was being evaluated for electronic enhancement. Again, should any usable material emerge, I may revisit the issue.

Third, defense counsel expressed general skepticism about the traffic stop. In particular, he questioned the motivations of the officers; they were not really enforcing the traffic laws, he said, but rather hoping to identify the ultimate recipient of the narcotics. Counsel also found it unlikely that a person transporting illegal narcotics would have risked attracting police attention by driving recklessly, and denied that his client had done so.

Fourth, defense counsel more generally questioned the content of his client's statements during the traffic stop. He expressed skepticism that his client had responded evasively to the officers' questions. More particularly, counsel challenged the voluntariness of Vasquez-Rodriguez's consent to the

8

search. According to counsel, Vasquez-Rodriguez speaks little or no English.[7] The AUSA responded that the law enforcement agents communicated in English with Vasquez-Rodriguez, and that he both understood and responded.

Defense counsel's first and second contentions, as I say, currently present no cognizable issue. His third and fourth contentions at least purport to pose disputed issues of fact: Did Vasquez-Rodriguez drive recklessly? Was the traffic stop a pretext for the officers' pursuit of their narcotics investigation? Did Vasquez-Rodriguez understand the questions directed to him in the English language and knowingly consent to a search? Was he legitimately detained, or was his SUV legitimately searched, based on suspicions raised by his "evasive" answers? I find, however, that these are not *material* issues that require a hearing. Their resolution either way would not determine whether the physical evidence must be suppressed.

### 2. Permissibility of the traffic stop

Consider the traffic stop itself. A traffic stop of a car is akin to a *Terry* investigative stop of a person. *Berkemer v. McCarty*, 468 U. S. 420, 439 (1984) (citing *Terry v. Ohio*, 392 U. S. 1 (1968)); see also *Rodriguez v. United States*, 575 U.S. __, 135 S.Ct. 1609, 1614 (2015). Less intrusive than an arrest, a *Terry* stop requires reasonable suspicion of criminal activity, rather than probable cause. *Id.; Knowles v. Iowa*, 525 U.S. 113, 117-18 (1998). A classic reasonable-suspicion basis for a traffic stop, though not the only one, is the officer's observation of speeding or some other traffic violation. Defense counsel denies that his client was speeding or driving recklessly, and argues that the officers' true motivation was to investigate a drug case, not to enforce the traffic laws. Those contentions, however, do not rise to the level of requiring an evidentiary hearing.

---

[7] At court appearances, defendant has received the aid of a Spanish-language interpreter.

*First,* the officers' reasonable suspicion of a traffic violation and their subjective motivations are beside the point, because they had actual, firsthand knowledge that Vasquez-Rodriguez was transporting narcotics. Officers received the air tank from CS and transported it to New Jersey. They knew that a meeting had been set up so that the drugs could be delivered to a go-between. They surveilled the site of the meeting in New Brunswick. The go-between who showed up to the meeting turned out to be Vasquez-Rodriguez. The officers themselves saw CS, another person, and Vasquez-Rodriguez transfer the air tank to defendant's Chevy Tahoe. Vasquez-Rodriguez transported hundreds of thousands of dollars' worth of illegal narcotics on his own, an unlikely scenario unless he held a position of trust in the trafficking organization. The officers followed the Tahoe all the way to Jersey City, where they pulled it over.

In short, the officers had probable cause to arrest Vazquez-Rodriguez at any time after the transfer of the air tank to the Tahoe in New Brunswick. Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that would warrant a person of reasonable caution in believing that an offense has been or is being committed. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 208 n.9 (1979); *Wong Sun v. United States,* 371 U.S. 471, 479 (1963); *Brinegar v. United States,* 338 U.S. 160, 175-76 (1949). That threshold is easily surpassed here. *A fortiori,* the officers possessed facts sufficient to justify a brief traffic stop.[8]

---

[8] The Supreme Court recently held that a traffic stop cannot be extended after the officer's investigation of the traffic infraction has run its course. *Rodriguez v. United States,* 575 U.S. __, 135 S.Ct. 1609 (April 21, 2015). Authority for an ordinary traffic stop ends "when tasks tied to the traffic infraction are—or reasonably should have been—completed." 135 S.Ct. at 1614. A traffic stop may be extended, however, based on independent reasonable suspicion of an offense. *See id.* at 1616-17 (majority opinion, part III). "An officer may ... expand the scope of a traffic stop and detain the vehicle and its occupants for further investigation if he 'develops a reasonable, articulable suspicion of criminal activity.'" *United States v. Frierson,* --- F. App'x ----, 2015 WL 3485994 (3d Cir. 2015) (quoting *United States v. Givan,* 320 F.3d 452, 458 (3d Cir.2003)).

The officers' knowledge of the Tahoe's drug payload is enough to establish the permissibility of the stop, irrespective of defendant's factual contentions. I nevertheless consider them briefly. Even taken on their own terms, they fail to rise to the level of requiring a hearing, for the following additional reasons:

*Second,* the defense has not sufficiently placed in issue the officers' reasonable suspicion that Vasquez-Rodriguez committed traffic violations. The officers' observations are recorded in their reports. In response, defense counsel's certification states only that "[his] office's investigation has determined" that Vasquez-Rodriguez drove north on the Turnpike and did not speed or drive recklessly. Counsel obviously does not have personal knowledge of those facts, and he has not proffered that there is any third party witness. At oral argument counsel stated that, if there were a hearing, his client might or might not testify. Without more, I can only conclude that defendant's request for a hearing is based on a bare desire to cross-examine the officers. That desire, without more, is not enough to justify a hearing.

*Third,* as a matter of law, the officers' subjective motivations—whether to enforce the traffic laws, or to investigate a drug case—are irrelevant. The test is an objective one; if the facts and circumstances known to the officers rise to the level of reasonable suspicion, then an investigative stop is permissible. Indeed, if there is a sufficient basis for a stop, it does not matter whether the officers actually suspect another crime.[9] "[The] cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren v. United States,* 517 U.S. 806, 813 (1996).

---

Here, the officers did not extend a mere traffic stop without justification. Traffic infractions aside, they had actual preexisting knowledge of a drug offense, and they also arrested Vasquez-Rodriguez based on the drugs in his jacket pocket.

[9]   Perhaps the traffic-law basis for the stop was a pretext, at least initially. Obvious motives would be to avoid revealing the confidential source or alerting the ultimate recipient of the drugs. But the pretext, if any, is not germane to the Fourth Amendment issue.

11

### 3. Permissibility of the Tahoe search

Assuming *arguendo* that this was a permissible traffic stop, Vasquez-Rodriguez next questions whether the facts developed into probable cause or consent to search his car. In particular, he denies making evasive responses to the officers' questions, and states that his consent to the search was vitiated by his inability to understand English. Once again, these are not issues that require a hearing. In some cases, a traffic stop sets off a chain of events whereby suspicions ripen into probable cause, and each link of that chain must be valid if the search is to be upheld. This is not one of those cases; there were multiple, independent bases for the warrantless search of the Tahoe and seizure of the air tank.

*First,* of course, this was hardly a case of "probable cause" for a "search" at all. The air tank was not just probably, but certainly, in the back of the Tahoe. Moreover, the officers were contemporaneously aware of the tank's significance as evidence. CS reported that he had received the tank from the drug traffickers in Texas, who engaged his services to deliver it to their co-conspirators in New Jersey. The law enforcement officers transported the tank by air from Texas to this State. They themselves placed it in CS's car. In New Brunswick, they saw Vasquez-Rodriguez and two others transfer the tank to the Chevy Tahoe. They then followed the Tahoe, with Vasquez-Rodriguez at the wheel, from New Brunswick to Jersey City. Whether or not the officers had opened the tank earlier (the record is silent), they knew the tank was in the Tahoe, and they had ample reason to believe that it contained drugs.

*Second,* the tank was in plain view in the back of the Tahoe. The defendant did not deny this, even in conclusory terms; he certainly made no factual proffer that the tank was in a concealed area.[10] That the tank was in plain view accords with common sense. The air tank (the traffickers thought) could safely remain unhidden; the welded-shut tank was itself the hiding place. Unfortunately for the traffickers, CS was cooperating with the law enforcement

---

[10]   I take judicial notice that a Chevy Tahoe is not a car with a trunk, but an SUV.

12

agents, who were well aware of what the tank contained. Because the tank was in plain view, and because the officers recognized its significance as evidence without further expansion of the search, it could be seized from the interior of the Tahoe without a warrant. *Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (during traffic stop, officer observes, *inter alia,* knotted opaque balloon containing heroin and other drug paraphernalia on car seat); *New York v. Class*, 475 U.S. 106, 114 (1986) (evidence seen while looking for vehicle identification number); *Arizona v. Hicks,* 480 U.S. 321, 325-326 (1987) (in addition to the item itself being in plain view, there must be probable cause to believe the item is contraband). *See also Horton v. California,* 496 U.S. 128, 130 (1990) (no requirement that the discovery of evidence in plain view be "inadvertent").

These two grounds justify the search that yielded the air tank. They do not in any way depend on resolution of factual disputes identified by the defendant, *e.g.*, whether he answered questions evasively, or understood English well enough to consent to a search.[11]

---

[11] A third ground gets us to the same place by a different route. The officers could legitimately search the interior of the Tahoe for evidence of the drug offense for which they initially arrested Vasquez-Rodriguez. The officers, while conducting the stop, were entitled to order the Vasquez-Rodriguez to get out of the car. *Knowles v. Iowa,* 525 U.S. 113, 117-18 (1998); *Pennsylvania v. Mimms*, 434 U. S. 106, 111 (1977). Vasquez-Rodriguez does not deny that he asked for his jacket (it was January) and that before handing it to him, the officers patted it down and discovered a bundle of heroin in the pocket. That was the basis for his arrest. Having arrested Vasquez-Rodriguez for possession of narcotics, the officers could search the Tahoe for further evidence of that offense. Where a car stop develops into a custodial arrest, the Fourth Amendment permits a warrantless search if "it is reasonable to believe" that the car has "evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009). And it was "reasonable to believe" that, because the officers in fact knew the Tahoe contained drug evidence.

Finally, I add that the defendant's alleged lack of fluency in English is not a strong argument for suppression. The consent form he signed was in both Spanish and English. And consent would be yet another basis for the search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973); *Florida v. Bostick,* 501 U.S. 429, 434-35 (1991) (no particular level of suspicion is required to justify a request for consent to search).

The defendant has not identified any specific factual issue that is material to the Court's resolution of his motion to suppress evidence taken from the Chevrolet Tahoe. Accordingly, the motion to suppress the evidence will be denied without an evidentiary hearing.

## ORDER

Defendant having moved to suppress evidence (ECF nos. 16, 19); and the United States having filed a response (ECF no. 17); and the Court having heard oral argument on June 12, 2015; and good cause appearing therefor;

IT IS this 25th day of June, 2015

ORDERED that defendant's motion to suppress evidence is DENIED, for the reasons expressed in the foregoing opinion.

_____
KEVIN MCNULTY, U.S.D.J.